**VOEST–ALPINE INTERNATIONAL CORP., Plaintiff,**

v.

**The CHASE MANHATTAN BANK, N.A., Defendant and Third-Party Plaintiff,**

v.

**BANK OF BARODA, Third-Party Defendant.**

**No. 81 Civ. 5601 (KTD).**

United States District Court, S. D. New York.

Aug. 4, 1982.

---

Breed, Stairs & Berger, New York City, for plaintiff; Stanley T. Stairs, Christopher F. Meatto, Andrew Berger, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant and third-party plaintiff; Andrew J. Connick, Eugene F. Farahaugh, Scott H. Wyner, Vincent J. Barra, New York City, of counsel.

Dougherty, Ryan, Mahoney, Pellegrino & Giuffra, New York City, Mudge, Rose, Guthrie & Alexander, New York City, for third-party defendant Bank of Baroda; Thomas W. Evans, Robert A. Jaffe, Shari J. Levitan, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Voest-Alpine International Corp. ("Voest") brings this action to recover amounts allegedly due under two letters of credit issued by Bank of Baroda and confirmed by defendant Chase Manhattan Bank, N.A. ("Chase"). The gravamen of the complaint is that Chase improperly refused payment under the letters of credit when Voest presented its bills of lading and other required documentation. Chase filed a third-party complaint against Bank of Baroda alleging that if Chase is liable to Voest for wrongfully dishonoring the drafts, then Bank of Baroda should be liable to Chase. Chase now moves for summary judgment against Voest asserting that the documents presented to Chase were fraudulent and did not comply with the terms and conditions of the letters of credit. Bank of Baroda also moves for summary judgment on the third-party complaint asserting that Chase did not wrongfully dishonor plaintiff's drafts and that therefore the third-party complaint must fail.

## BACKGROUND

Certain facts relevant to this case are not in dispute. In November and December, 1980, Bank of Baroda, at the request of Metal Scrap Trading Corp., Ltd. ("MSTC"), an Indian corporation, issued two irrevocable letters of credit in favor of the plaintiff Voest, a New York corporation and a subsidiary of a company controlled by the Austrian Government. These letters of credit (Number 40695 in an amount not to exceed $810,600.00 and Number 40750 in an amount not to exceed $604,950.00) were issued to finance a Voest transaction with MSTC to deliver scrap metal to India. Chase originally advised the letters of credit but later confirmed them to Voest, thereby assuming an independent obligation to pay Voest upon proper presentment of the requisite drafts and documents.

The letters of credit as issued and amended required that the drafts submitted by Voest be accompanied by (i) on-board bills of lading evidencing current shipment dated no later than January 31, 1981; (ii) certificates of inspection indicating the date of shipment, and (iii) weight certificates issued by an independent inspector.

Between February 2 and February 6, 1981, the goods to be shipped to India were loaded aboard the ill-fated M.V. ATRA. On February 13, 1981, Voest presented to Chase three drafts drawn under the letters of credit along with the required documents. The last day for presentment of these documents was February 15. The documents presented to Chase contained irreconcilable inconsistencies. The bills of lading, signed by the captain of the M.V. ATRA, were dated January 31, 1981 and stated that the goods were on board the ship on that date; however, the weight certificates and certificates of inspection stated that the goods had been loaded aboard the vessel between February 2 and February 6, 1981.

In late February, Chase informed Bank of Baroda that it believed that the drafts and documents presented to it by Voest conformed with the letters of credit. Chase requested that Bank of Baroda advise as to

acceptance of the documents. Chase provided Voest with a copy of the advice it sent to Bank of Baroda and, at Voest's request, added the following language:

Payment of the above mentioned draft ... will be made at maturity on July 30, 1981 to [Voest].

On March 23, 1981, after inspecting the documents, Bank of Baroda informed Chase that the documents presented by Voest did not conform to the terms and conditions of the letters of credit. On July 30, 1981, Chase refused payment on the drafts submitted by Voest.

On August 21, 1981, Voest filed a complaint against Chase asserting three claims: (1) wrongful dishonor by Chase; (2) liability of Chase arising from its acceptance of the drafts and documents whether or not they were conforming, and (3) conspiracy among Chase, Bank of Baroda and MSTC to find technical defects in the presented documents. On September 28, 1981, Chase served a third-party complaint on Bank of Baroda alleging that if Chase is liable for wrongfully dishonoring the drafts then Bank of Baroda should be liable to Chase in the same amount.

On its motion for summary judgment Chase argues that it properly refused Voest's drafts because the bill of lading fraudulently stated that the goods were placed on board on January 31, 1981 when, in fact, on that date, the vessel was at sea. It is asserted that this misrepresentation is confirmed by other documents which show that the goods were not placed on board the vessel until February 2. Voest does not dispute that the goods were not placed on board the M.V. ATRA until after January 31 but insists that there was no fraud since other documents presented by Voest clearly disclosed that the scrap steel was loaded by February 6, 1981. Furthermore, Voest urges that any fraud resulting from discrepancies in the documents were waived by Chase when it accepted the documents and guaranteed payment.

## DISCUSSION

The letters of credit issued by Bank of Baroda in this case state that they are to be governed by the Uniform Customs and Practice for Documentary Credits (International Chamber of Commerce 1974 Revision) ("UCP"). As a result, this case is not governed by the New York Uniform Commercial Code. See N.Y.U.C.C. § 5–102(4) (McKinney's 1964).

It is a fundamental principle in all letter of credit transactions that issuing and confirming banks deal in documents and not in the underlying transaction for merchandise. U.C.P. Article 8; *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970). Letters of credit provide an important means whereby parties to transactions may allocate the credit risks inherent in all commercial dealings. A buyer of goods may ask a bank to issue a letter of credit under which the bank promises to pay the seller upon presentation of the proper documents. In this case, in order to be paid, Voest was obligated to present on-board bills of lading evidencing current shipment dated no later than January 31, 1981 and various inspection certificates. The proper presentment of these documents to Chase comprised MSTC's only assurance that Voest would perform its duties on the underlying contract for steel before getting paid. Consequently, MSTC's obligation to pay Bank of Baroda, the issuer of the letter of credit, depended "on the bank's strict observance of the credit's documentary conditions for payment and [was] independent of the buyer's liability to the seller on the underlying contract." Note, *"Fraud in the Transaction": Enjoining Letters of Credit During the Iranian Revolution*, 93 Harv.L. Rev. 992, 1001 (1980).

Thus, the letter of credit constitutes a commitment on the part of the issuing bank to pay the beneficiary upon presentation of the required documents. As a confirming bank, Chase added its own liability to that of the Bank of Baroda to honor drafts of the beneficiary. See *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461 (2d Cir. 1970). The duty of the bank in these transactions is to inspect carefully the drafts or documents presented under a let-

ter of credit to determine whether they conform with the terms of the letter of credit. *See* U.C.P. Article 7. A bank has no obligation to pay if the documents presented are not in strict compliance with the terms and conditions of the credit.

■ Here, the bill of lading presented to Chase was dated January 31, 1981 and stated that the goods were on board the ship. The certificate of inspection and the weight certificate, two additional documents required by the letters of credit, stated, however, that the goods were not loaded on board the ship until at least February 2, 1982. Regardless of when the goods were in fact loaded aboard the M.V. ATRA, there can be no doubt that the documents required for presentation were inconsistent on their face. Article 7 of the U.C.P. provides in part:

> Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit.

Chase was therefore entitled to conclude from this that the documents did not conform to the letters of credit and to deny payment.

Voest argues that the peculiar facts of this case preclude Chase from asserting any deficiencies in Voest's documents. Specifically, Voest argues that Chase has waived any objections to the defects because Chase acknowledged to Voest that the documents submitted conformed to the letters of credit. It was not until six months later, after Voest incurred large fees attendant to removing the cargo off the M.V. ATRA allegedly in reliance on Chase's acceptance of the documents, that Chase asserted the dishonor due to the discrepancy.

■ Voest's theory of waiver and estoppel have no application to the circumstances at bar. Reliance upon *Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224 (5th Cir. 1973), *cert. denied*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974) to support the waiver theory is misplaced. In *Barclays*, defendant Mercantile National Bank ("Mercantile") confirmed a letter of credit issued by one of its customers, Allied Mortgage Consultants, Inc. ("Allied"), a mortgage broker. This letter of credit was issued to the plaintiff Barclays Bank D.C.O. ("Barclays"). Sometime later, Barclays presented a draft to Allied for amounts unpaid under the letter of credit and the draft was dishonored. Barclays then presented the draft to Mercantile who also denied liability. Barclays then sued Mercantile. One of the many defenses interposed by Mercantile was that Barclays failed to provide the necessary documentation accompanying its draft to Mercantile and thus Mercantile properly dishonored the drafts.

In affirming a district court judgment against Mercantile, the Fifth Circuit flatly rejected this argument by Mercantile. The court found that Mercantile's dishonor was not based upon improper documentation because, in fact, Mercantile never fulfilled its duty to examine the documents. Assuming there was faulty documents, however, the court also found that Mercantile's dishonor on that basis was wrongful. When Mercantile dishonored Barclays' draft it stated by letter that the documentation was proper. This occurred only six days before the expiration of the letter of credit. According to the court, if the documents were faulty, Mercantile should have notified Barclays of the problem at the time of dishonor to give it an opportunity to rectify the defect prior to the time the letter of credit expired. The court stated,

> Mercantile cannot lull Barclays into believing that there was no problem with the documentation when there was still time for Barclays to have attempted to cure the technical defect and then turn around and assert the lack thereof as a defense to the suit on the draft. Having informed Barclays that the documentation was proper, Mercantile must, on the facts of this case, be held to have waived the alleged faulty documentation as a defense.

481 F.2d at 1237.

In the case at bar, the letter of credit expired February 15, 1981. Voest present-

ed its draft and documents to Chase on February 13, 1981. These documents contained a discrepancy which Chase overlooked. Unlike the discrepancy in *Barclays* (which unfortunately is not revealed by the court's opinion), here the bills of lading stated that the vessel was loaded on January 31 when it is undisputed that, in fact, the vessel was not loaded until February 2. Of course, had Chase noticed the discrepancy in the documents on February 13, it might have been able to notify Voest prior to the expiration date two days later; however, several facts preclude this possibility from creating a waiver of Chase's right to dishonor the drafts. First, even if Voest did correct the documentary error found in the bill of lading to reflect loading on February 2, the letter of credit would have been unenforceable since it specifically required loading by January 31. The discrepancy was therefore incurable. It may be argued that Voest could have easily rectified this problem by having MSTC renegotiate the letters of credit with Bank of Baroda to change the January 31 requirement. There is no evidence, however, to show that Voest could have prevailed upon these two other parties to amend the letter of credit. Moreover, Chase's obligations under any amendment would be predicated on its reconfirming the changed letter of credit. The possibility that Voest could have effected all the necessary amendments within a two day period is simply too remote to bring this case within the holding of *Barclays*.

1. For the same reason that Voest's waiver argument does not apply its estoppel theory is without merit.

2. In another case cited by plaintiff, *United Commodities-Greece v. Fidelity International Bank*, N.Y.L.J., p. 6 (N.Y.Sup.Ct. May 28, 1982), the court ruled that a confirming bank, having accepted substantial compliance with the terms of the letter of credit, waived its right to require strict compliance. This case is also not applicable to the case at bar. In that case, the defendant confirming bank opposed a motion by the issuing bank's customer to enjoin payment under the letter of credit. The confirming bank argued to the court at that time that the documents complied with the letter of credit. For at least a month prior to the expiration date of the letter of credit and even

Second, the bank is under no obligation to inspect the documents immediately upon presentation. The U.C.P. requires that it do so within a "reasonable time." U.C.P. Article 8. Chase evidently attempts to process any documents within three to five days (excluding weekends). *See* Morillo Deposition, November 20, 1981, pp. 127–28. Thus, even if Chase noticed the discrepancy under its normal procedures it would have been too late for Voest to rectify it. As it turned out, Chase did not advise Voest that the documents appeared to be in order until February 25. As a result, Voest cannot now argue that Chase's actions prevented it from meeting the requirements of the letters of credit.[1]

Voest's waiver theory is not any more applicable to the situation at bar by virtue of the *Barclays* progeny cited by plaintiff.[2] Each of these cases involved an application of the U.C.C. where the district judge found that the documents presented conformed with the letter of credit. *See, e.g., Bank of Canton, Ltd. v. Republic National Bank*, 509 F.Supp. 1310 (S.D.N.Y.), *aff'd*, 636 F.2d 30 (2d Cir. 1980); *Data General Corp., Inc. v. Citizens National Bank of Fairfield*, 502 F.Supp. 776 (D.Conn.1980); *U. S. Industries, Inc. v. Second New Haven Bank*, 462 F.Supp. 662 (D.Conn.1978). In the instant case, there is no dispute that a discrepancy existed in the documents which resulted in a failure to comply with the terms and conditions of the letter of credit. This fact justifies Chase's dishonor.[3]

following that date, the defendant insisted that the presented documents conformed. The defendant even notified the issuing bank that it had "accepted" the documents. The injunction was granted but later vacated. At a subsequent trial the defendant argued non-conformance. Significantly, the court noted that because the underlying agreement involved fungible goods, the beneficiary could have rectified any deviations from the terms of the letter of credit had it been notified.

3. Chase's main argument on this motion is that Voest committed fraud by submitting bills of lading which falsely stated that the ship was loaded on January 31. This argument must be rejected for the record. Although Voest presented the bills of lading to Chase, it did not

For the foregoing reasons, Chase's motion for summary judgment is granted. The third-party complaint against Bank of Baroda is accordingly dismissed and its motion for summary judgment granted. The complaint is dismissed.

SO ORDERED.

prepare them; the Master of the ATRA did. Voest submitted the bills of lading along with certificates which indicated the actual date of loading. Surely, if a fraud was taking place Voest would have arranged to have these truthful certificates changed. The speciousness of Chase's fraud allegation is further evidenced by Chase's own negligence in not detecting the inconsistencies in the documents. Chase cannot be heard to say it was victimized by fraud when its own officer failed to open his eyes to the error in the documents. In fact, Chase initially told Voest that it found the documents in conformity with the letters of credit. Fortunately for Chase in this case, the law governing letters of credit falls in its favor.